THE PEOPLE OF THE STATE OF NEW YORK ex rel. WESTERN NEW YORK AND PENNSYLVANIA RAILWAY COMPANY, Respondent, *v.* THE STATE TAX COMMISSION, Appellant. (Special Franchise Proceedings, Town of Leicester, 1920; Towns of Leicester and Mt. Morris, 1921; Towns of Genesee Falls and Portage, 1921.)

*Taxation — special franchise — railroad bridge over Genesee river — final orders in favor of relator affirmed.*

Appeals by the State Tax Commission from three final orders in the above-entitled proceedings entered in the Albany county clerk's office on May 29, 1924.

Final orders affirmed, with costs. All concur, except Van Kirk, J., dissenting, with an opinion in which Hinman, J., concurs.

VAN KIRK, J. (dissenting): The " orders or judgments " appealed from vacate three special franchise assessments and strike them from the assessment rolls. The special franchises are two crossings of the Genesee river by the bridges of the relator's line. The orders of the referee were based upon the finding that the river, *at each place of crossing,* was non-navigable, and not a public highway. This presents the sole question on these appeals. If the Genesee river is navigable at the crossings, it is a public highway and the assessments were valid. It is a fresh water stream flowing into Lake Ontario. We have no concern with tidal

waters. If navigable in fact the stream is navigable in law. Navigability has been defined: " The true rule is, that the public have a right of way in every stream which is capable, in its natural state and its ordinary volume of water, of transporting, in a condition fit for market, the products of the forests or mines, or of the tillage of the soil upon its banks. It is not essential to the right that the property to be transported should be carried in vessels, or in some other mode, whereby it can be guided by the agency of man, provided it can ordinarily be carried safely without such guidance. Nor is it necessary that the stream should be capable of being thus navigated against its current, as well as in the direction of its current. If it is so far navigable or floatable, in its natural state and its ordinary capacity, as to be of public use in the transportation of property, the public claim to such use ought to be liberally supported. Nor is it essential to the easement that the capacity of the stream, as above defined, should be continuous, or, in other words, that its ordinary state, *at all seasons of the year*, should be such as to make it navigable. If it is ordinarily subject to periodical fluctuations in the volume and height of its water, attributable to natural causes, and recurring as regularly as the seasons, and if its periods of high water or navigable capacity ordinarily continue a sufficient length of time to make it useful as a highway, it is subject to the public easement." (*Morgan* v. *King*, 35 N. Y. 454, 459.) And again: " The capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river, rather than the extent and manner of that use. If it be capable in its natural state of being used for purposes of commerce, no matter in what mode the commerce may be conducted, it is navigable in fact, and becomes in law a public river or highway." (*Economy Light Co.* v. *United States*, 256 U. S. 113, 122.) The fact that the bed of the stream to its center is privately owned, or owned by the carrier assessed, does not affect its navigability or its character as a public highway; navigability rests upon the water, not on the underlying lands. The title to the lands within rural highways is generally privately held and a railroad company cannot avoid a special franchise tax at its crossing by purchasing title to the lands under its crossing. Also the fact that there are dams in the Genesee river, over which boats of any size, and logs even, cannot pass, is not germane to the question of navigability. These dams only occasion a present condition; and, if this is a public stream and the dam is an obstruction to navigation and commerce, the State, under its power to improve the stream for purposes of navigation and commerce, can require its removal or modification in such manner as to permit navigation without incurring on the part of the State liability to the riparian owner, or the owner of the dam. (*Fulton L., H. & P. Co.* v. *State*, 200 N. Y. 400.) In determining navigability we consider the stream in its natural state and not as changed by artificial conditions. We pass then to the real issue: What is the actual condition of this stream as to its capacity for navigation? The referee says in his opinion: " Assuming the stream to have been navigable at one time and not navigable at the times in question, does the change to a stream not navigable in fact extinguish the public right or interest? There can be little question from the record in this case, that the Genesee river at one time was ' navigable ' within the construction put by the courts upon the term." And the referee finds that, though navigable at one time, it is not at present a navigable stream. This conclusion is due, not to the fact that the capacity of the stream has lessened since the earlier days, but to

the fact that conditions along the stream have so changed that it has fallen into disuse as a highway of commerce. We find nothing in the record indicating that there is less capacity in the stream than in the earlier days. There are, however, conditions due to the construction of dams, to the fact that means of transportation by land or canal have been much developed and to the fact that the forests have been largely cut from the lands adjoining the stream, which have occasioned the disuse of the stream for commerce. As stated by the referee, at one time the Genesee river was navigable. Both above and below these bridges for long stretches of the stream not only the logs from the forest but the grain from the uplands were carried to market upon this stream, the logs in rafts, the grain in boats, and, although these parts of the stream are now little if any used for such navigation, the stream remains still a public highway, it still has the capacity for the same kind of commerce that in earlier days was carried upon it, and it must still remain a public highway. (*Economy Light Co.* v. *United States, supra.*) In that case the stream had not been used for purposes of navigation for a century and the chief navigation of earlier years was carrying of furs to market and the transportation of supplies for trappers. But it is the capacity of the stream and not its present use which determines whether or not it is navigable and its capacity for commerce and navigation had been demonstrated by actual use in the past. We think it must be held that both above and below these bridges the Genesee river is a public highway. What then is the condition at and between the bridges? Within this part of the stream are three high falls within a distance of about one-half mile. These falls are in the line of a high bluff which extends southerly of and about parallel to the shore of Lake Ontario, down which bluff the streams, including the Niagara river, flowing from the south into Lake Ontario, must pass. The Portage bridge of relator is about one mile and a quarter above the upper falls and its Mt. Morris bridge is about twenty miles, as the river runs, below the lower falls, there being a distance between the two bridges, as the river runs, of about twenty-two miles. Between the upper and the lower falls navigation is interrupted by these natural obstructions in the stream. But these falls do not obstruct navigation at either of the bridges. In the earlier days the products of the soil and the forests above the upper falls were brought down to the point where, on account of the current as the stream approaches the crest of the falls, navigation was too dangerous. But this point, as I understand the proof, was at or below the point of the present dam, which is in turn below the Portage bridge. At this point the dam, the artificial obstruction, being removed, the stream has the same capacity for carrying the products of the soil and of the forest that it had in earlier times. We think the evidence justifies the finding that the stream at this point is navigable. At the Mt. Morris bridge the conditions are entirely similar. Between the location of this bridge and the lower falls formerly timber was growing on the uplands along the stream and the cleared fields under cultivation were producing grain, and these products were carried from the point at which they were brought to the river down past the point of this crossing. There is likewise a dam at this point. In the earlier days the stream was here used for navigation; and, in its natural state unobstructed by the dam, it still has the capacity for such navigation. Actual measurements of the stream between the lower falls and the Mt. Morris bridge showed a normal depth of water of from eighteen to thirty-three inches, a capacity sufficient, if the

occasion still existed, to transport as formerly logs and grain. We think there is no proof in this case, from which the court would be justified in finding that the stream, the artificial obstructions having been removed, has not the same capacity for navigation at the location of each of these bridges which the stream generally formerly had. In the *Economy Light Co. Case (supra,* 123) the court said: " We concur in the opinion of the Circuit Court of Appeals that a river having actual navigable capacity in its natural state and capable of carrying commerce among the States, is within the power of Congress to preserve for purposes of future transportation, even though it be not at present used for such commerce, and be incapable of such use according to present methods, either by reason of changed conditions or because of artificial obstructions." Also, the court said (p. 122): " Navigability, in the sense of the law, is not destroyed because the watercourse is interrupted by occasional natural obstructions or portages." We conclude that the Genesee river is at each crossing navigable and a public highway. The final orders appealed from should be reversed and the assessments as made confirmed, with costs. I disapprove finding No. 12, in each of the referee's reports; and find that the Genesee river is a navigable stream at the location of the relator's bridge in the towns of Leicester and Mt. Morris, also in the towns of Genesee Falls and Portage. Hinman, J., concurs.

